Curia, per

Butler, J.
This case presents a question of some nicety, and one, upon which there may be a difference of opinion.
The ground taken is, that the promise was collateral, being an undertaking to pay the debt of another; and, therefore, should have been founded on a sufficient consideration, and in writing. This objection must be fatal, unless the undertaking of defendant can be made to *215 assume the legal character of an independent and original promise, founded upon an adequate consideration. If so, it will aíford a good cause of action by its own obligation, unaffected by the previous liability of Welbourn himself.
In looking through our own decisions <pn the subject, this is the prevailing principle that has been recognized by them. That where one has a complete and enforcible lien on the property of his debtor, a promise of a third person to pay the debt, on condition that the property under the lien is given up, will be held binding, and not within the statute of frauds. This upon the ground that the release of the lien is the surrender of . a security operating in the nature of a payment, and, therefore, if not a benefit to the promissor, is a prejudice to the creditor, to the extent of his loss. As Judge Johnson says, in the case of Jones vs. Ballard & wife, 2 Mill. C. R. 113 — “If there be a new consideration moving to the person making the promise, from the party to whom it is made, or if confiding in the promise, he discharges the original debtor, or loses or abandons a security which he had on him before, the undertaking is original, and need not be in writing? The decision in Adkinson vs. Barfield, 1 McC. 575, presents and rules the question in a more definite form. The plaintiff in that case had attached the horse of his absent debtor, in the possession of the defendant, who promised that if the plaintiff would release the horse, he would pay the debt; the court held the promise good, and not within the statute of frauds. Judge Gantt, who delivered the judgment of the court, rests his opinion mainly on the authority of the case in 2 Wils. R. where a landlord being about to destrain for rent, the defendant promised to pay the rent in arrear, on condition that the property should be delivered up freed from distress ; it was held that this promise was not avoided by the statute of frauds. This decision was subsequently reviewed and approved by Lord Eldon. Judge Johnson, in the case of Rogers vs. Collier, 2.Bail. 581, seems to’ take the same view of the subject. It might be inferred from some of the cases, that the defendant incurred his liability, because property was placed in his *216 hands to pay the debt of the original party — and that he, therefore, derived a benefit by the temporary use of it, or by some advantage which the possession would give him. But this is not the controlling consideration which seems to have governed the adjudications. For in the case of Barnstine vs. Eggart, 3 McC. 162, Judge Johnson says, it is not necessary to the validity of a promise to pay the debt of another, that the party to be charged should derive a benefit. If it be a damage to the other party, or a benefit to the party promised for, it will be sufficient; provided, these proceed from the forbearance to enforce, immediately, some subsisting lien. The only case which would seem to conflict with these views, is that of Boyce vs. Owens, 2 McC. 208. Fanny Owens was in possession of a tract of land belonging to Mansfield Owens. The plaintiff procured a domestic attachment for £89, to be levied on the land, by a constable. The defendant, Fanny Owens, promised the plaintiff, that if he would discontinue his attachment, she would pay the debt. This was held to be a promise (within the statute of frauds, because it was not in writing. But it will be found that, in this case, there was no independent consideration to make the contract original. It was collateral, because it was to pay the debt of a third person, without any injury to the plaintiff in giving up any security. As Judge Nott remarks, this was giving up no lien, because the attachment for that amount could not 'be served by a constable, but should have been directed to the sheriff of the State; and besides, that such an attachment could not be levied on land. In the same case, Judge Nott recognizes the authority of Adkinson & Barfield. So that I do not think that the case of Boyce and Owens can be regarded as inconsistent with the other cases quoted, when all its circumstances are taken into consideration. It is, perhaps, unnecessary to say whether the case under consideration comes within the case of Corbit vs. Cochran, 3 Hill, 41. Judge Earle, in that case, recognizes the principles which I have been considering, in his reasoning on it. As a question of fact, it may have been that plaintiff had discharged Welbourn from all liability, when he entered defendant as his debtor on the books. The case *217 was decided on that assumption, and if so, it is unexceptionable in its result. The recorder intimates the opinion that, but for his understanding, at the time of the case of Carlisle vs. Quattlebum, 2 Bail. 452, he might have held that defendant was liable, on an original promise, if plaintiff had given up any legal lien. That case does not rule that an innkeeper has no lien on the goods of his guest for the payment of his bill. • The true principle on which it rests is, that Quattlebum was not an innkeeper, and, therefore, not entitled to the rights and remedies of one. He was one who occasionally, and only as he thought proper, afforded accommodation to travellers. Such being his situation, he was not subject to the liabilities or rights of an innkeeper, without special contract.
“ A person who makes it his. business to entertain travel-lers and passengers, and to-procure lodging and necessaries for them and horses and attendants, is an innkeeper.” His duty is not only to procure lodging and victuals, but to receive such guests as can pay, and to take charge ,of their goods and effects. From these duties result his rights. The incivility of making a special contract with every guest who comes in, sanctions the propriety of an implied understanding that he may detain his guest who eats, or his horse which eats, until payment be made. See Bac. Ab. Innkeepers. This right of the innkeeper to have a lien on the goods of his guests, is fully sustained by the authorities quoted by the recorder, and which I refer to without further comment. So far as it regarded Welbourn’s board account, the plaintiff, who was an innkeeper, in the strictest sense of the word, had a lien onWelbourn’s trunk, as his security for payment. He would not give up that lien till the defendant consented to become his debtor. But for defendant’s undertaking, he would, in all probability, have been paid. The trunk may be regarded as having been given up to the defendant, in consequence of which the plaintiff lost all his means of enforcing payment against Welbourn. Is it not right, then, that he should be indemnified for his certain loss, by the defendant who occasioned it? More especially, if all demand against Welbourn was *218 discharged by the proceeding. The affirmative is entirely consistent with the authorities which I have referred to.
As to the money paid for the travelling expenses of Welbourn, it was advanced not at all on the credit of Welbourn, but on the credit and original undertaking of defendant. Such a contract as that, is not at all affected by the statute.
All the other questions in this case have been satisfactorily disposed of by the decision belew. Motion dismissed.
O’Neall, Evans, and Frost, JJ. concurred.